UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARK WILSON                                                                    PLAINTIFF

V.                                                 CIVIL ACTION NO. 3:18-CV-559-DPJ-JCG

UNITED STATES DEPARTMENT                                                       DEFENDANT
OF COMMERCE

ORDER

Defendant United States Department of Commerce seeks dismissal [79] and summary

judgment [81] in this employment-discrimination and retaliation case.  For the following reasons,

the Court concludes that Plaintiff Mark Wilson has created a genuine issue of material fact as to

his Title VII disparate-treatment, retaliation, and hostile-work-environment claims, though the

scope of the first two claims should be narrowed.  Defendant's summary-judgment motion [81]

is therefore granted in part and denied in part; its motion to dismiss [79] is converted under

Federal Rule of Civil Procedure 12(d) and considered moot.

I.        Facts and Procedural History

Since 2002, Wilson, a White male, has been employed as an information-technology

("IT") officer for the National Weather Service ("NWS") in its Jackson, Mississippi, office.  The

NWS is a component of the National Oceanic and Atmospheric Administration, which is a

bureau of the United States Department of Commerce.  Wilson is the sole IT officer in the

NWS's Jackson office.

That office, which employs roughly 25 people, is run by the meteorologist in charge

("MIC").  Since November 2016, William Parker, a Black male, has filled that position and has

been Wilson's immediate supervisor.  According to Wilson, Parker discriminated against him

because of his race, subjected him to a race-based hostile work environment, and retaliated

against him after he initiated contact with an equal employment opportunity ("EEO") counselor on May 26, 2017. Wilson asserted these claims under Title VII, suing Defendant on August 17, 2018.

After discovery closed, Defendant filed its dispositive motions, and an extended briefing period followed. Briefing began in the normal course, but the Court allowed Wilson to file a sur-reply because Defendant exceeded the Court's page limit in its reply. After that, the Court conducted a video teleconference ("VTC") with the parties, and it allowed Wilson to present additional argument in a follow-up letter addressing the Court's concerns. Briefing has closed; the Court has both personal and subject-matter jurisdiction.[1]

II.    Standard

Defendant seeks an order of dismissal under Rule 12(c) while separately seeking summary judgment under Rule 56 based largely on the same arguments. At this late stage of the case, and given the extensive record, the Court elects to convert the Rule 12(c) motion to one for summary judgment under Rule 12(d).[2]

---

[1] Defendant may be frustrated by the number of opportunities Wilson has received to make his arguments—so is the Court. While Defendant is to blame for Wilson's second bite at the apple, the Court exercised its discretion to allow the third bite after the VTC. That VTC was intended to explore settlement, but it was also apparent that much work remained if settlement could not be achieved; Wilson's briefs largely ignored Defendant's core arguments and failed to properly cite supporting record evidence. It was not the Court's goal to give Wilson yet another chance at complying with Rule 56(c). On the other hand, the Court believed that what it had already read suggested a jury question, and it did not want to do Wilson's work for him by combing the extensive record to find the specific cites necessary to complete this Order. Accordingly, the Court acted under Rule 56(e), which states that when—as here—"a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact." Wilson responded with a letter and attachment that will be docketed for the record.

[2] Even if the Court had considered the motion under Rule 12(c) and concluded that Wilson failed to adequately plead one of his counts, the Court would have allowed him to amend where his summary-judgment record adequately demonstrated his ability to plead plausible claims. *See*

Summary judgment is warranted under Rule 56(a) when evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when. . .both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).[3]

---

*Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted) ("Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so.").

[3] Wilson repeatedly failed to comply with Rule 56(c) in his briefs because he offered factual assertions without record cites, general cites to lengthy documents, or specific cites that failed to support his contentions.  Notably, the Court has no "duty to sift through the record in search of

III.     Analysis

     A.     Preliminary Issues

        1.     Failure to Exhaust

Title VII "permits most federal employees to seek relief from proscribed discriminatory employment practices in [f]ederal [d]istrict [c]ourt.  As a precondition to seeking this judicial relief, however, complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency."  *Pacheco v. Mineta*, 448 F.3d 783, 787–88 (5th Cir. 2006).  The Court "interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'"  *Id.* at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

In his Complaint, and during discovery, Wilson identified a slew of allegedly discriminatory and/or retaliatory acts.  Of those, Defendant identified four categories of conduct Wilson failed to include in his EEO complaint:  (1) a vague allegation about Parker's refusal to "cooperate with [Wilson] in performing the work of the [NWS] in Jackson," Compl. [1] ¶ 9; (2) a complaint that Wilson "has not been up for any promotions" and that when he "inquired about an open position at the regional office which would lead to future promotions," he was informed that he would need to wait for a restructuring of the field offices before he could be eligible," *id.*

_____

evidence to support a party's opposition to summary judgment."  *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) (quoting *Malacara v. Jarber*, 353 F.3d 393, 405 (5th Cir. 2003)); se*e also* Fed. R. Civ. P. 56(c)(1)(A).  While the evidence supporting Wilson's assertions may be somewhere within the 1,128 pages he attached to his response, absent proper citation, the Court finds such arguments unsubstantiated and has relied only on the facts specifically noted in this Order.

¶ 15; (3) Parker cancelling Wilson's "previously approved training for FY 18," *id.* ¶ 21; and (4) Parker's failure to "report[] incidents through official channels in the proper time as required by agency policy," *id.* ¶ 24; *see* Def.'s Mem. [82] at 14.

Wilson never contests Defendant's argument that these incidents were not exhausted and therefore cannot form the basis of discrete discrimination and/or retaliation claims. Instead, he argues that the Court should consider "the [entire] flow of events showing William Parker's racist attacks against Mark Wilson." Pl.'s Mem. [90] at 29. In other words, while Wilson may not have exhausted the individual acts Defendant identified, they are still "relevant, and may be used to illuminate current practices." *Id.* at 28 (quoting *Downey v. So. Nat.'l Gas Co.*, 649 F.2d 302, 305 (5th Cir. 1981) (ellipses omitted)).

Wilson's argument is correct, *as far as it goes*. The Fifth Circuit "has repeatedly approved of the introduction of previous conduct to illuminate currently actionable issues in discrimination and harassment cases." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). And Wilson does not seem to suggest that the unexhausted complaints constitute discrete acts of actionable discrimination. To the extent he does suggest this, his failure to exhaust those claims entitles Defendant to summary judgment on them. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

2.      Failure to Timely Counsel

In a similar argument, Defendant contends that any alleged acts of discrimination occurring more than 45 days before Wilson first initiated contact with an EEO counselor are time-barred. Pursuant to applicable regulations,

> Aggrieved persons who believe they have been discriminated against on the basis of race . . . must consult a Counselor prior to filing a complaint . . . . An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory . . . .

29 C.F.R. § 1614.105(a)(1); *see Smith v. Johnson*, 647 F. App'x 377, 378 (5th Cir. 2016) ("A federal employee's failure to seek informal counseling within 45 days of an adverse employment event bars him from pursuing the claim.").

Wilson first met with an EEO counselor to discuss his complaints on May 26, 2017. Therefore, Defendant argues, claims based on alleged discriminatory acts occurring more than 45 days before then—or before April 11, 2017—were not timely counseled and cannot be considered. Defendant identifies three acts that fall into this category: (1) decisions surrounding telework; (2) decisions surrounding credit hours; and (3) March 15–16, 2017 emails and meetings. Def.'s Mem. [82] at 16. As with the failure-to-exhaust argument, Wilson does not directly address the timeliness of these three acts—or any others—instead arguing that they can be considered in the big picture. Again, the Court may consider these acts to the extent they are probative of the claims that are not time-barred, but summary judgment is granted on any Title VII disparate-treatment claims based on these older acts. [4]

B.     Disparate-Treatment Claim

"In employment discrimination cases, a plaintiff may present his case by direct or circumstantial evidence, or both." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). Wilson asserts that this is a direct-evidence case. "Direct evidence is evidence which, if believed, proves the fact without inference or presumption." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)). Defendant argues the case under the burden-shifting analysis applicable to

---

[4] This holding narrows the scope of discrete acts forming the basis of the disparate-treatment and retaliation claims. It does not address the extent to which this other evidence should be admitted at trial—an issue for another day.

circumstantial-evidence cases as set forth in *McConnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Wilson never specifically identifies which statements constitute direct evidence of discrimination, but only one alleged statement referenced in his briefs possibly meets the test. According to Wilson, "Parker continually and openly *states* that he wants an all-black work force."  Pl.'s Mem. [90] at 1 (emphasis added).  The problem is that Wilson cited no record evidence suggesting Parker ever made such a statement, much less did so "continually and openly."  *Id.*  And he could find no evidence of that alleged statement even after the Court gave him another opportunity to support his assertion.  Instead, he highlighted co-worker opinions and other statements from Parker that required inferences.

Regardless, both approaches to a Title VII race claim require proof that Wilson suffered an "adverse employment action" because of his race.  *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (explaining that "[a] statement or document which shows 'on its face that an improper criterion served as a basis . . . for *the adverse employment action* [is] direct evidence of discrimination'" (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005) (emphasis added)); *see Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 273 (5th Cir. 2006) (providing that plaintiff proceeding under *McDonnell Douglas* framework must show "he was discharged or suffered some other *adverse employment action*" (emphasis added)).

Most of the exhausted and/or counseled acts Wilson complains about fail because they were not adverse employment actions.  "Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."  *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) (quoting *McCoy v. City*

*of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)).  "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action."  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).

Defendant pressed this issue in its opening memorandum, addressing 13 separate acts and explaining why each failed to reflect an ultimate employment decision.  *See* Def.'s Mem. [82] at 19–22.  Wilson essentially ignored this legal argument in his response, apparently relying on his factual recitation.  That is insufficient.  The non-movant must "articulate the precise manner in which the submitted or identified evidence supports his or her claim."  *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004).  Nevertheless, Wilson's facts did mention two alleged acts that he now says were adverse employment actions.  As discussed next, the first was not an ultimate employment decision, but the second creates a jury question.

First, Wilson says the decision to deny him training in Huntsville, Alabama, constituted an ultimate employment decision.  Failing to train an employee can amount to an ultimate employment decision if it directly affects compensation.  *See Brooks v. Firestore Polymers, L.L.C.*, 640 F. App'x 393, 397 (5th Cir. 2016); *see also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999) (upholding district court's grant of summary judgment in race-discrimination case where denied training did not affect compensation).

Significantly though, "adverse employment actions are ultimate employment decisions, not the day-to-day decisions made in the context of the employment relationship."  *Roberson v. Game Stop/Babbage's*, 152 F. App'x 356, 361 (5th Cir. 2005).  Thus, "a potential, tangential effect on increased compensation" is not enough to avoid summary judgment.  *Brooks*, 640 F. App'x at 397 (rejecting plaintiffs' claim that denied training reduced opportunity for overtime as

8

"tangential" and "insufficient") (citing *Shackelford*, 190 F.3d at 406 (holding that denied training that "tend[ed] to affect" employment status was not an adverse employment decision)).  Wilson must therefore show that the decision to deny training "was a decision about benefits." *Roberson*, 152 F. App'x at 361.

On that point, Wilson baldly argues that losing the technical training at the Huntsville meeting "adversely affected [his] ability to be promoted."  Pl.'s Mem. [90] at 2–3.  But he does not say how and does not identify any promotions he allegedly lost.  Moreover, the evidence he cites for this argument does not appear to link the Huntsville meeting with any lost promotions. *Id.* (citing Report of Investigation [91-2] at 71–73 (CM/ECF pagination)).[5]

Defendant pointed out in reply that Wilson offered no proof connecting the missed Huntsville meeting to any lost promotions.  *See* Def.'s Reply [94] at 7.  And despite being allowed to file a sur-reply and present more evidence after the VTC, Wilson never fixed the problem as to the Huntsville trip.  Instead, he merely argued—without record citation—that Parker allowed a Black employee to attend the meeting.  *See* Pl.'s Sur-Reply [99] at 2.  That misses Defendant's point.  Even assuming Parker allowed a Black employee to attend, the records still fail to address any lost promotions, much less ones that would be more than tangentially related to the decision to block Wilson's attendance.  *Brooks*, 640 F. App'x at 397.

---

[5] At another point in his brief, Wilson mentions a promotional opportunity that he did not seek because someone named John Duxbury told him he would not be a good fit.  *See* Pl.'s Mem. [90] at 3 (citing Wilson Dep. [91-5] at 119).  But the cited record evidence does not suggest that this incident was connected to the Huntsville training and seems to indicate that this incident occurred before that decision.  Finally, Wilson never makes an argument that this other promotion constituted a race-based failure to promote.  Nor could he—as his cited record evidence states, Wilson never applied for that position.  To state a prima facie case, he must show he "applied for and was qualified for an available position."  *Haynes v. Pennzoil Co.*, 207 F.3d 296, 300 (5th Cir. 2000).

"[U]nsubstantiated assertions[] and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co.*, 276 F.3d at 759.  Wilson has not shown that the lost training opportunity was an adverse employment action.[6]

Although the Huntsville incident does not involve an ultimate employment decision, another decision may.  Wilson alleges in the introduction to his opposition brief that "after Parker's tenure, [Wilson]'s cash awards plummeted.  Cash awards for black employees were increased."  Pl.'s Mem. [90] at 2.  This time, the cited record does support Wilson's assertion.  In 2017, Wilson's cash award totaled $900, whereas his awards from 2007–2016 ranged from $1,000 to $2,500 annually.  *See* Report of Investigation [91-2] at 42 (including information on a $700 award and a $200 award).  Thus, the record shows that his awards decreased.

Defendant addresses this claim in its reply, offering two reasons to reject it.  First, it acknowledges Wilson's cited record evidence showing decreased bonuses but says the record otherwise fails to show "black employees were increased."  Def.'s Reply [94] at 8.  While Wilson's first brief failed to support that key assertion, he has since filled the hole.  According to the co-worker who helped Parker prepare the bonuses, Parker favored Black employees and gave them "significantly higher monetary performance awards."  Report of Investigation [91-2] at 34.

Defendant alternatively argues that decreased bonuses are not adverse employment actions.  *See* Def.'s Mem. [82] at 20 & n.15 (citing *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 885 (S.D. Tex. 2010)).  But the Fifth Circuit has never answered that question.  And while

---

[6] In the letter Wilson provided after the VTC, he reaffirmed his argument that the denied training in Huntsville was an ultimate employment decision, citing "Exhibit 'C' to Plaintiff's Response." Exhibit "C" is 97 pages long, and Wilson did not cite to the "particular parts" allegedly showing that the training cost him a promotion.  Fed. R. Civ. P. 56(c)(1)(A).  He has now had three opportunities to comply with Rule 56(c), and the Court has no duty to search for his evidence in this vast record.  *See Jackson*, 602 F.3d at 379–80.

Wilson cites no authority for his position, it appears that district courts within the circuit are mixed. *Compare Grother v. Union Pac. R. Co.*, No. H-04-3279, 2006 WL 1662936, at *8 (S.D. Tex. June 9, 2006) (holding that unfavorable review resulting in lower-than-expected bonus constituted tangible employment action), *with Daniel v. Universal Ensco, Inc.*, No. 09-4140, 2011 WL 13140729, at *19 (S.D. Tex. Aug. 31, 2011) ("Plaintiff's reduction in bonus thus does not qualify as an adverse employment action."), *aff'd on other grounds*, 507 F. App'x 434 (5th Cir. 2013).

Despite this mixed history, an ultimate employment decision is one that affects, *inter alia*, "compensation." *Pegram*, 361 F.3d at 282. Reducing an employee's bonus seemingly affects compensation, and when allegedly done for racial reasons by the same supervisor who increased Black bonuses, it creates a question of fact in this case under either a direct-evidence or burden-shifting approach.

Accordingly, the Title VII disparate-treatment claim may go forward on the performance-award issue, but Wilson has not shown that the other exhausted/counseled acts constituted adverse employment actions. *See, e.g.*, *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) (noting that neither placement of employee on "performance improvement plan" nor issuing "poor performance review" constitutes adverse employment action); *Mora v. Ashcroft*, 142 F. App'x 206, 207 (5th Cir. 2005) (holding that neither investigation into employee nor admonishment letter "amount to an adverse employment action"). The motion for summary judgment on the Title VII disparate-treatment claim is granted except as to the cash bonus issue. Things get trickier from here.

11

C.       Hostile-Work-Environment Claim

Wilson claims Parker subjected him to a race-based hostile work environment.  To

establish a Title VII hostile-work-environment claim, Wilson must prove:

> (1)[]he belongs to a protected group; (2) []he was subjected to unwelcome
> harassment; (3) the harassment complained of was based on race; (4) the
> harassment complained of affected a term, condition, or privilege of employment;
> [and] (5) the employer knew or should have known of the harassment in question
> and failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).  Defendant says Wilson's proof fails to

establish he was harassed, that such harassment was based on his race, or that the harassment

affected a term, condition, or privilege of employment.  Def.'s Mem. [82] at 26.  Wilson does not

directly address any of these elements and instead summarizes the applicable legal standards and

concludes, "Wilson clearly has been subjected to an actionable hostile work environment."  Pl.'s

Mem. [90] at 27.

"For harassment on the basis of race to affect a term, condition, or privilege of

employment . . . it must be 'sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment.'"  *Ramsey v. Henderson*, 286 F.3d 264,

268 (5th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. (7, 1 (1993)).  "[The] court[]

must consider the following circumstances:  the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance."  *Id.* (quoting *Walker

v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)).

The record easily supports a jury question on whether Wilson was harassed.  Some of that

harassment could be viewed as severe, like the allegation that Parker gave Black employees

larger performance awards based on race.  Other conduct was not severe, but a jury could find it

pervasive and long-lasting, like heated confrontations, slamming doors, Parker telling others that

12

he would show Wilson who runs the office, moving Wilson's work station within the department, denying training, preventing Wilson from attending conferences, providing Wilson poor working conditions, surreptitiously recording Wilson, and violating policy by emailing confidential information to others.  The Court must view the allegations in the light most favorable to Wilson, and in that light a question of fact appears.  Wilson has likewise presented testimony from other employees regarding Parker's alleged statements and actions that creates a jury question whether Parker's alleged treatment of Wilson was based on race.

Alternatively, even if this claim failed the Rule 56 test, the Title VII disparate-treatment claim is moving forward, the evidence overlaps to some extent, and there is enough here for the Court to conclude that "a better course would be to proceed to a full trial." *Kunin v. Feofanov*, 69 F.3d 59, 62 (5th Cir. 1995) (holding that trial court has discretion to deny summary judgment "even if the standards of Rule 56 are met") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56 (1986)).  Summary judgment is denied on the hostile-work-environment claim.[7]

---

[7] The Court must note that Wilson's briefing was not always faithful to the facts and law.  For example, when arguing his hostile-work-environment claim, Wilson disingenuously likened his case to *E.E.O.C. v. WC&M Enterprises, Inc.*, where the Fifth Circuit concluded that the plaintiff was entitled to a trial.  496 F.3d 393, 400–01 (5th Cir. 2007); *see* Pl.'s Mem [907] at 26–27. Wilson described the case as involving "hostile comments from [] co-workers *on one occasion*," one undeserved written warning, and the supervisor's "practice of banging on the glass partition to startle the plaintiff."  Pl.'s Mem. [90] at 26 (emphasis added) (citing *WC&M*, 496 F.3d at 398– 99).  Those facts are similar to Wilson's, but much more happened to the *WC&M* plaintiff.  For example, for about one year, the plaintiff was "*constantly* called 'Taliban' and referred to as an 'Arab'" by co-workers; was mocked by co-workers for his diet and prayer rituals; received other sporadic comments suggesting he was involved in the September 11 attacks; was told he "should 'just go back where he came from'"; received a written warning describing him as a "Muslim extremist"; and endured the glass-banging behavior Wilson noted.  *WC&M*, 496 F.3d at 400 (emphasis added).  In a similar way later in his brief, Wilson took liberties with *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006), arguing that plaintiffs hoping to state a prima facie case no longer need to show a valid comparator under "nearly identical circumstances."  Pl.'s Mem. [90] at 34.  *Ash* addressed a different test and did not abrogate the Fifth Circuit's disparate-treatment standard; indeed, the cases Wilson suggests *that* Ash abrogated were decided after *Ash*.  *See* Def.'s Mem. [82] at 22 (quoting *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x

D.      Retaliation Claim

The retaliation claim is by far the hardest to analyze.  According to Wilson, he "was

continuously targeted for retaliation by Parker."  Pl.'s Mem. [90] at 17.  In order to establish a

prima facie case of retaliation under Title VII, a plaintiff must show that "(1) []he engaged in

protected activity; (2) the employer took a materially adverse action against h[im]; and (3) a

causal link exists between [the] protected activity and the adverse action."  *Wheat v. Fla. Par.*

*Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016).

A materially adverse action is "one that would 'dissuade[] a reasonable worker from

making or supporting a charge of discrimination.'"  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d

321, 331 (5th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68

(2006)).  "The purpose of this objective standard is 'to separate significant from trivial harms'

and 'filter out complaints attacking the ordinary tribulations of the workplace, such as the

sporadic use of abusive language . . . and occasional teasing.'"  *Id.* (quoting *Burlington N.*, 548

U.S. at 68).

Defendant succinctly argues that Wilson's retaliation claim fails for three reasons:  (1)

most of the acts he complains about occurred before Parker learned that Wilson had engaged in

protected activity; (2) the conduct occurring after that date was not materially adverse; and (3)

even assuming an adverse employment action took place after Parker learned about the protected

activity, there was no causal connection.  Def.'s Mem. [82] at 30.  Wilson never directly

addresses these arguments.

209, 213 (5th Cir. 2018), *as revised* (Aug. 10, 2018) (quoting *Lee v. Kan. City S. Ry. Co.*, 574
F.3d 253, 260 (5th Cir. 2009)).  There are other examples of questionable candor, and counsel
will need to do better as this case moves forward.  To be clear though, the Court is not making a
finding under Mississippi Rule of Professional Conduct 3.3.

1.     Parker's Knowledge of Protected Activity

Starting with Parker's knowledge of protected activity, the Court must first identify the

protected activity.  Defendant focuses on Wilson's May 26, 2017 EEO complaint and argues that

Parker first learned about it on September 26, 2017.  Def.'s Mem. [82] at 30–31.  Defendant then

says that there were no adverse employment actions after that date that were causally connected

to the EEO complaint.  The EEO complaint certainly qualifies as protected activity, but was it

the first, and when did Parker hear about it?

Wilson never addressed either point in his initial brief or sur-reply.  But the Court raised

the issue during the VTC, giving Wilson another chance to show Parker knew about his

protected activity sooner than Parker acknowledged.  This time, Wilson offered the following:

> In regard to Wilson's giving notice to Parker of suffering from a hostile
> work environment and discrimination on May 30, 2017, *see* Exhibit "B" to
> Plaintiff's Response in Opposition to Motion for Summary Judgment, ROI 54-
> 2017-00176, at 4, pp. 3,5.
>
> Earlier on May 15, 2017, Wilson complained to Parker by email of
> harassment.  Exhibit "B" to Plaintiff's Response in Opposition to Motion for
> Summary Judgment, ROI 54-2017-00176, at Exhibit 18, pp. 68–69.  On July 5,
> 2017, Wilson emailed Parker pointing out that in violation of policy Parker did
> not report Wilson's May 15, 2017, claim of a hostile work environment to
> management.  Exhibit "B" to Plaintiff's Response in Opposition to Motion for
> Summary Judgment, ROI 54-2017-00176, at Exhibit 76, p.1.

Letter [106] at 2.

None of this rebuts Defendant's theory that Parker first learned about the EEO complaint

on September 26, 2017.  To start, the emails Wilson mentions in his letter are not protected

activity unless they address something Title VII prohibits.  "[N]ot all abstract grumblings or

vague expressions of discontent are actionable as complaints."  *Hagan v. Echostar Satellite,*

*L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008) (citation and quotation marks omitted).  "While an

employee is not expected to use precise legal terms," he must at least "put his employer on notice

15

that his complaint was based on discrimination." *Wright v. Custom Ecology, Inc.*, No. 3:11-CV-760-DPJ-FKB, 2013 WL 1703738, at *8 (S.D. Miss. Apr. 19, 2013) (citing *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 396 (5th Cir. 2008) (finding no protected activity because plaintiff's complaint of unfair treatment never referred to the discriminatory treatment as age-based)).

Here, Wilson's post-briefing arguments and record cites fail to show he complained about race in the emails or that Parker knew Wilson had engaged in activity protected by Title VII before September 26, 2017. In chronological order, Wilson first references a May 15, 2017 email he sent Parker. *See* Letter [106] at 2 (citing Report of Investigation [91-2], Ex. 18 at 68–69). But that email never mentions race-based concerns and instead addresses Wilson's union activities as Union Steward. Report of Investigation [91-2] at 57–58 (CM/ECF pagination). Moving to the alleged exchange on May 30, 2017, Wilson's record cites do not show a race-based complaint. *Id.* at 2–3 (CM/ECF pagination). Finally, the July 5, 2017 email from Wilson to Parker faulted Parker for not reporting the May 15 complaint, but again, the May 15 complaint appeared to address union activities rather than race-based discrimination or harassment, and the July 5 email never itself mentions race. *See id.* at 107 (CM/ECF pagination).

While at least one of these emails mentioned a hostile work environment, that alone is not enough to constitute protected activity. *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (per curiam) (holding that a general complaint of "hostile work environment" was not protected activity because it "lacked a racial or gender basis"). Wilson was clearly making union-based complaints in the emails he cites in his post-VTC letter, and there is no mention of discrimination or harassment based on race. Having now had three chances to offer evidence, the Court finds that Wilson has failed to create a material factual dispute regarding the

date Parker learned of Title VII protected activity.  Accordingly, the Court concludes that Parker

first learned about the EEO complaint on September 26, 2017.  Any decisions before that date

cannot be causally related to the EEO complaint.  *See EEOC v. EmCare, Inc.*, 857 F.3d 678, 683

(5th Cir. 2017) ("To establish the causation prong of a retaliation claim, the employee should

demonstrate that the employer knew about the employee's protected activity.").

2.    Alleged Conduct After Parker Was Informed

It is hard to pinpoint the events that happened after September 26, 2017, and which of

those Wilson believes to be retaliatory.  Wilson has mentioned dozens of alleged slights in his

submissions; the Court was able to date some, but others it could not.  And as noted above,

Wilson left the record ambiguous as to what has been exhausted and/or counseled.  Of the

exhausted acts occurring after September 26, 2017, not all would constitute adverse employment

actions.  For these reasons, the Court will not speculate about which acts Wilson believes were

retaliatory; this Order focuses strictly on the ones Wilson has argued.  *See Smith*, 391 F.3d at 625

(observing that non-movant must "articulate the precise manner in which the submitted or

identified evidence supports his or her claim").

With that said, there appear to be two events after September 26, 2017, that Wilson has

argued as potential acts of retaliation:  (1) an incident where Parker wadded up a union complaint

and threw it in Wilson's face and (2) Parker's decision to secretly record a performance-review

meeting with Wilson and then email the recording to a NOAA attorney.  The Court has been able

to confirm that both happened after September 26, 2017.[8]

---

[8] This has been a moving target.  For example, the only act of alleged retaliation Wilson mentions in his sur-reply is the decision to block his trip to Huntsville.  Pl.'s Sur-Reply [99] at 2. But he never addressed Defendant's argument that Parker made the Huntsville decision before he learned about protected activity.  *See* Def.'s Mem. [82] at 31 n.29.

Starting with the paper-wadding incident, this is the only act Wilson identified as retaliation in the argument section of his initial brief.  According to him, complaints "on behalf of others" constitute protected activity under Title VII, so when he "presented his union grievance to Parker[,] he was acting as spokesperson on behalf of the other white employees." Pl.'s Mem. [90] at 32.  Wilson then says:  "Attacking Wilson, wadding up the grievance, and throwing it in his face constitutes retaliation." *Id.*  Thus, Wilson appears to claim that presenting a union grievance to Parker was protected under Title VII and having it thrown in his face was the retaliation—no other acts are argued as constituting protected activity or retaliation. *See Smith*, 391 F.3d at 625 (observing that non-movant must "articulate the precise manner in which the submitted or identified evidence supports his or her claim").

This argument fails for three reasons.  First, in the fact section of Wilson's brief, he describes the incident as one "outside of those exhausted."  Pl.'s Mem. [90] at 3.  If so, then it is not before the Court as an independent claim.  Second, the Court has not seen the grievance and does not know whether it asserts rights Title VII protects; the evidence Wilson cites does not say, and Wilson never cites the actual union grievance. *See* Pl.'s Mem. [90] at 3 (citing Report of Investigation [91-4], Ex. 17, Tab A at 174–79 (unidentified photo and email exchange after confrontation that does not describe the grievance or paper being thrown); Byrd Dep. [91-9] at 85–86 (describing Parker's demeanor but not addressing content of union grievance specifically)); *see also id.* at 32 (offering no citation)[9].  Third, even if exhausted, this incident constitutes the type of "'petty slight[], minor annoyance[], and simple lack of good manners' that

---

[9] Wilson cites pages 85 and 86 of Byrd's deposition, but the excerpts he filed do not include page 86. *See* Byrd Dep. [91-9] at 48 (CM/ECF pagination) (page 85); *id.* at 49 (page 87).

. . . [is] not actionable retaliatory conduct." *Stewart*, 586 F.3d at 332 (quoting *Burlington N.*, 548 U.S. at 68).

The recorded conversation is different. Wilson presented this issue in his factual recitation, and this time, he produced competent record evidence. During his deposition, Parker testified that he decided to record a performance-review meeting with Wilson *because* he thought Wilson had said some untrue things in his EEO complaint. Parker Dep. [91-7] at 19–20 (CM/ECF pagination). That establishes that the recording occurred after Parker learned about the EEO complaint, and it would allow a jury to find causation. And as Wilson notes, the way Parker disseminated the information violated NOAA policy and potentially the Rehabilitation Act.

Things get murky from here. In its reply, Defendant never directly addresses Wilson's factual statement that "[t]he recording constituted flagrant retaliation for filing an EEO Complaint." Pl.'s Mem. [90] at 14. Instead, Defendant lumped the claim with several others, arguing:

> Many of those facts are not material, as they pertain to unexhausted or uncounseled issues and/or otherwise relate to events and circumstances that are not at issue in this case (e.g., hiring and promotion decisions; Plaintiff's reasonable accommodations for his medical conditions; MIC Parker's recording his conversation with Plaintiff during a performance evaluation and providing that recording to counsel during the discovery phase of this case; and events and opinions from a different office at a time that pre-dates all times relevant to this case).

Def.'s Reply [94] at 12.

Notably, this incident was not included in the list of unexhausted or un-counseled claims Defendant provided in its opening brief. In addition, it occurred after Parker learned about the EEO complaint, and Parker admits the complaint precipitated the decision to record the meeting. Those facts address Defendant's causation arguments. Defendant's only other retaliation

argument is that the conduct after September 26, 2017, was not materially adverse.  But as noted above, Defendant never makes that argument as to this specific evidence.

At bottom, it remains unclear from Defendant's reply why it believes this incident fails to create a jury question.  The retaliation claim based on the surreptitious recording will therefore go to trial.

IV.     Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  As to all three claims, the Court notes that "even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'a better course would be to proceed to a full trial.'"  *Kunin*, 69 F.3d at 62 (quoting *Anderson*, 477 U.S. at 255–56).  The record here is dense, and not everything in it supports a Title VII claim.  But there is enough in this record to find that the better course would be a trial on the merits.  If Wilson fails to present competent record evidence for each essential element of each count during his case in chief, then the Court will have the duty to grant judgment in Defendant's favor.  For the foregoing reasons, Defendant's Motion for Summary Judgment [81] is granted in part and denied in part.  Its Motion to Dismiss [79] is considered moot.

This case was previously taken off the pretrial and trial calendars due to the Coronavirus pandemic.  At this point, the Court has indefinitely suspended all civil jury trials.  Accordingly, this case is hereby stayed.  The parties are instructed to contact the Court's courtroom deputy before the end of the week to set it for status conference in January 2021.  Given the number of incidents raised in the briefs, the parties are instructed to submit the proposed pretrial order one week before the pretrial conference that will eventually be set.

**SO ORDERED AND ADJUDGED** this the 21st day of September, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE